IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN STANLEY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-4571 |
| | : | |
| PAUL G. LITTLE, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                                                      **August 6, 2024**

Pro se plaintiff John Stanley, currently incarcerated at State Correctional Institution Chester ("SCI Chester"), brings this action under 42 U.S.C. § 1983 against three employees of Wellpath, the prison's medical contractor, claiming he did not receive adequate medical treatment as required by the Eighth Amendment. Defendants Paul G. Little, John Nicholson, and Karen Jones-Edney now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, inter alia, Stanley did not exhaust his administrative remedies and has not pled facts which show deliberate indifference to a serious medical need. Because Stanley did not exhaust his claim for monetary damages, and because his requests for declaratory and injunctive relief on the basis of past conduct are misplaced, the motion to dismiss will be granted.

**BACKGROUND**

Defendants Paul G. Little (identified in the Complaint as the "Medical Director or Site Physician at SCI Chester"), John Nicholson (identified as the "Physician Assistant"), and Karen Jones-Edney (identified as the individual "in controll [sic] of the Medical Records") are sued in their individual capacities. Compl. at 3, ECF No. 2.[1] Stanley brings Eighth Amendment claims relating to numerous and varied issues with his medical care at SCI Chester.

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Stanley first asserts he had constipation for two years prior to filing this suit. *Id.* After he completed a sick call slip, Little prescribed clear-lax, laxative tablets, Lactulose and Docusate to help with the constipation. *Id.* at 3-4. Since 2020, Stanley alleges he has undergone x-rays, ultrasounds and "multiple lab work for blood and urine." *Id.* at 4. Sometime in 2022, Little and Nicholson told Stanley his x-rays showed he was full of "shit" and asked him "when are you going home." *Id.* Stanley "filled out several 'Sick-Call' slip[s] complaining about his constipation to the point that [his] Mother" called the institution and spoke to the Unit Manager about Stanley's medical condition. *Id.* After that phone conversation, Stanley was placed in the infirmary on October 21, 2022. *Id.* In the infirmary, he received stool softeners and a laxative. *Id.* Stanley spent three days in the infirmary until October 24, 2022. *Id.* When he was discharged, a nurse told him his bowel sounds were active. *Id.* Stanley followed the advice of medical staff by filling up on fluids and eating more vegetables and fruits. *Id.*

At the end of 2022, while going over lab results with Nicholson, Stanley learned he had blood in his urine for the first time. *Id.* Stanley asserts his medical records showed that blood was in his urine for almost a year before he was told that information. *Id.* Though Defendants knew of the blood in Stanley's urine "for some time," they "refused to do what they were obligated." *Id.* Stanley was scheduled to see a urologist but was not scheduled to see anyone for his "severe constipation." *Id.* at 5.

In early 2023, Nicholson also told Stanley he had Hepatitis-B ("Hep-B"). *Id.* When Stanley discussed this information with Little, he "got upset" and told Stanley "Nicholson shouldn't have told you that." *Id.* When Stanley inquired about what could done about this diagnosis, Little responded: "you don't have Hep-B, anymore. You had it, but you don't now." *Id.* Stanley learned Hep-B could cause many symptoms, including abdominal pain, fever, nausea, weakness, and

2

fatigue. *Id.* He also learned that symptoms of Hep-B could become chronic, possibly causing liver failure, cancer, or cirrhosis. *Id.* Stanley informed Defendants he had experienced abdominal pain, fever, nausea, weakness, and fatigue, but nothing was done. *Id.* Thus, although Little and Nicholson knew of Stanley's Hep-B diagnosis, they did not tell him until the beginning of 2023 and did not provide him any treatment for this illness. *Id.*

On March 8, 2023, Stanley felt "some type of knot in his lower right back." *Id.* After an examination, Nicholson told Stanley he had kidney stones. *Id.* On March 9, 2023, Stanley went to the hospital and had a procedure for the blood in his urine, but he did not see the urologist, Dr. Belkoff. *Id.* at 5; *see also* Exs. at 1, ECF No. 2-1. Stanley only learned the results of this procedure after he filed a grievance. Compl. at 6. He found out he had benign prostatic hyperplasia, or prostate enlargement without cancer. *Id.* Stanley was prescribed Flomax for this condition but contends the medication "would have never been ordered if [he] didn't fill out that 'Sick-Call' slip." *Id.*

On July 6, 2023, Stanley filled out a sick call slip informing Little and Nicholson he had "diarrhea and hard stool coming out of his buttocks, but Little gave [him] a hard time before seeing what the problem was." *Id.* He was later seen by Nicholson, who checked Stanley's buttocks and told him he had hemorrhoids. *Id.* Stanley didn't believe Nicholson because he thought Nicholson's prior kidney stone diagnosis was false. *Id.* Stanley also believes that "Little has a history of hiding and delaying inmates health," and states Little has argued "with inmates so he can have a reason to transfer them out [of] the institution." *Id.* And in October 2022, while Stanley was in the infirmary, he overheard Nicholson tell a group of inmates "Little doesn't treat anyone until they are in serious need of treatment." *Id.* at 6-7.

On June 27, 2023, Stanley submitted a request to review his medical records. *Id.* at 7. Jones-Edney met with Stanley on June 30, 2023 to review his records, but she didn't bring the ones he wanted. *Id.* He submitted another request on September 7, 2023, but Jones-Edney did not provide Stanley with the records he asked for, so he wrote them down. *Id.* On September 13, 2023, Stanley requested to review the last fifteen years of his liver function tests. *Id.* And on September 19, 2023, he requested to review the last five years of his liver function tests. *Id.* Jones-Edney would not show him the records and told him he would have to submit a sick call slip to Nicholson. *Id.* After receiving approval from Nicholson, Stanley was shown some of his medical records on September 26, 2023. *Id.* At that time, Stanley was able to confirm "he actually had Hep-B in 2022." *Id.* As discussed above, Stanley was not told about this diagnosis until 2023, and he was never offered any treatment for Hep-B. *Id.* Stanley states he exhausted his administrative remedies by submitting Grievance No. 1025600, which went to final review. *Id.* at 8.

On November 15, 2023, Stanley filed the Complaint, a motion for leave to proceed *in forma pauperis*, and a motion to appoint counsel. ECF Nos. 1-3. On January 5, 2024, the Court granted Stanley leave to proceed *in forma pauperis* and dismissed his official capacity claims against Little, Nicholson, and Jones-Edney pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. ECF No. 6. Stanley, however, was permitted to proceed against Defendants in their individual capacities, and the Court directed service pursuant to Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915(d). *Id.* On February 23, 2024, Little, Nicholson, and Jones-Edney filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 12. On April 1, 2024, Stanley filed a "Motion in Support in Response to Defendants, Paul G. Little, John Nicholson, and Karen Jones-Edney," which the Court construes as his response in opposition. ECF No. 17. On

April 11, 2024, Defendants filed a reply brief, and on April 26, 2024, Stanley filed a sur-reply. ECF Nos. 19, 20. The motion to dismiss is now ripe.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679) (alteration in original).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Accordingly, "where a defendant moves to dismiss based on a failure-to-exhaust defense and the exhaustion issue turns on indisputably authentic documents related to the inmate's grievances, [a court] may consider those documents without converting a motion to dismiss to a motion for summary judgment." *Rinaldi v. United States*, 904 F.3d 257, 262 n.1 (3d Cir. 2018) (internal quotations and alterations omitted).

Additionally, the Court must construe pro se filings liberally. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). And because Stanley proceeds *in forma pauperis*, the Court may independently screen his Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, inter alia, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard to screen a complaint under § 1915 is the same as the standard that governs dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

**DISCUSSION**

Stanley brings an Eighth Amendment claim for deliberate indifference to his serious medical needs and a claim for conspiracy.[2] He seeks compensatory and punitive damages, a declaration that the acts and omissions of Defendants violated his constitutional rights, and a permanent injunction ordering Little and Nicholson to refrain from retaliation. In moving to dismiss, Defendants argue Stanley (1) failed to exhaust his administrative remedies, (2) failed to state an Eighth Amendment Claim because he was routinely seen and treated for his maladies, and (3) failed to state a conspiracy claim because he has not pled any factual allegations to support his conclusory assertions. Because Stanley did not exhaust his administrative remedies with respect

---

[2] As to the Eighth Amendment claim, Stanley asserts Little and Nicholson deprived him of treatment and hid medical test results by failing to advise him of his Hep-B diagnosis in a timely manner. Compl. at 8. He also asserts Jones-Edney would not allow him to review his medical records despite multiple requests. As to the conspiracy claim, Stanley alleges Defendants "conspired to violate [his Eighth Amendment rights] when they deceived and misled [him] to be[l]ieve that he was healthy." *Id*. He further asserts Defendants "deliberately conspired to lie and hide [his] illness by providing [him] with incorrect Medical Records and by referring [him] to someone who [sic] shouldn't be referred to." *Id.*

6

to his claim for monetary damages, and because past conduct cannot support requests for declaratory and injunctive relief, the motion to dismiss will be granted in full.

As a threshold matter, Defendants argue Stanley failed to fully exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e) ("PLRA"). Stanley filed a grievance which sought review of his medical records, but did not seek monetary relief. Br. Defs. Supp. Mot. Dismiss 12, ECF No. 12; *see also* Ex. C. (Grievance No. 1025600), ECF No.12-4. Because Stanley failed to request monetary relief in his initial grievance, Defendants contend he failed to exhaust all administrative remedies with respect to his request for monetary damages and so is barred from seeking compensation in this action. Br. Defs. Supp. Mot. Dismiss 14-15, ECF No. 12. Stanley responds that although he "did not set a specific do[l]lar amount" in his initial grievance, he made a request for "whatever the court may deem necessary," which he contends "satisfies the PLRA requirements." Pl.'s Br. Supp. 15, ECF No. 17.

Under the PLRA, prisoners must "exhaust internal prison grievance procedures before filing suit." *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Failure to exhaust is an affirmative defense that the defendant must plead and prove." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020). Exhaustion is also a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi*, 904 F.3d at 265 (internal quotations omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *see also Prater v. Dep't of Corr.*, 76 F.4th 184, 203 (3d Cir. 2023) (noting courts "determine

whether a prisoner has properly exhausted a claim by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances" (internal quotations omitted)).

The Department of Corrections' ("DOC") grievance policy, DC-ADM 804, sets forth a three-step process for review of inmate grievances.[3] First, an inmate must submit a written grievance to the Facility Grievance Coordinator or his designee within fifteen working days after the event upon which the grievance is based. DC-ADM 804, § 1.A(5), (8). If the grievance is rejected, the inmate has fifteen working days to appeal to the Facility Manager. *Id.* § 2.A. And if the Facility Manager rejects the appeal, the inmate may appeal for Final Review with the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days of the rejection. *Id.* at § 2.B.

The grievance must state the date, approximate time, and location of the events giving rise to the grievance, must identify the individuals directly involved in the events, and must state any claims the inmate wishes to make based on those events. *Id.* at § 1.A(11). In particular, "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." *Id.* at § 1.A(11)(d). As explained by the district court in *Wright v. Sauers*:

> a requirement to set forth the compensation or legal relief requested places the agency on notice of the prisoner's demand or valuation of his or her claim, and furthers the PLRA's underlying litigation avoidance goals by supporting early settlement or accommodation. . . . Given the underlying goals of the PLRA, and the state of the law requiring adherence to clearly stated content requirements, this Court must conclude that the mandatory nature of the language at issue gives rise to procedural default as a result of Plaintiff's failure to set forth the desired monetary or other legal relief on his initial grievance form.

---

[3] The policy is available online at https://www.pa.gov/en/agencies/cor/about-us/doc-policies.html.

No. 13-358, 2017 WL 3731957, *7-8 (W.D. Pa. Aug. 30, 2017), *aff'd*, 729 F. App'x. 225 (3d Cir. 2018).[4] Following *Wright*, district courts in the Third Circuit have routinely concluded that an inmate procedurally defaults any claim for money damages if he does not specifically request monetary relief in the initial grievance.[5] While a request for monetary relief in a grievance need not "set[] forth a specific dollar amount," the inmate must make a clear request for compensation. *See Hobson*, 2021 WL 2191282, at *8; *see also Sides v. Pa. Dep't of Corr.*, No. 2:18-145, 2020 WL 1493549, *7 (W.D. Pa. Mar. 27, 2020). An inmate must make a request for compensation even where monetary relief is unavailable through the grievance process and the incarcerated plaintiff otherwise gives "a detailed account of the underlying incident" in their grievance. *Wright*,

---

[4] On appeal, the Third Circuit explained that in *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), it had "rejected a procedural default claim based on an inmate's failure to specifically request monetary relief on a prior version of DC-ADM 804" that did not require an inmate to seek such relief in a grievance. 729 F. App'x at 227. It further explained: "we also observed that – to the extent [the Prison] was dissatisfied with our ruling – the Prison could 'alter the grievance system to require more (or less) of inmates by way of exhaustion.'" *Id.* (quoting *Spruill*, 372 F.3d at 235). "Subsequently, the Prison amended its policy to include the mandatory language deemed lacking in *Spruill*." *Id.*

[5] *See, e.g.*, *Shorter v. Sorber*, No. 22-5089, 2024 WL 1442163, *3 (E.D. Pa. Apr. 3, 2024) ("[Plaintiff's] failure to request [monetary remedies] in his initial grievance forecloses his ability to pursue them now."); *Miller v. Little*, No. 21-1941, 2023 WL 2529553, *3 (M.D. Pa. Mar. 15, 2023), *aff'd*, No. 23-2037, 2024 WL 957983 (3d Cir. Mar. 6, 2024) (*per curiam*) ("Because Miller did not specifically request monetary compensation, he procedurally defaulted and failed to exhaust available administrative remedies with respect to claims for monetary compensation, and he is barred from bringing a claim for money damages against the defendants as a consequence."); *Endrikat v. Ransom*, No. 21-1684, 2023 WL 3609157, *4 (M.D. Pa. May 23, 2023), *aff'd sub nom. Endrikat v. Little*, No. 23-2167, 2023 WL 8519196 (3d Cir. Dec. 8, 2023) (*per curiam*) (dismissing claims for monetary damages for failure to exhaust administrative remedies because prisoner did not request monetary damages in his initial grievance); *Cramer v. Bohinski*, No. 22-583, 2024 WL 1557377, *3 (M.D. Pa. Apr. 10, 2024) ("[B]ecause it is undisputed that McClain did not request monetary relief in his initial grievance regarding his Eighth Amendment claim, we find that any claim for monetary damages is unexhausted and will be dismissed."); *Hobson v. Tiller*, No. 1:18-233, 2021 WL 2191282, *8 (W.D. Pa. May 6, 2021) ("Failure to request monetary compensation in an initial grievance means that a court must dismiss a legal claim in federal court seeking money damages") (collecting cases).

729 F. App'x. at 226; *see also Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000) (explaining the DOC's grievance process could not provide a grieving incarcerated person with monetary relief).

The Court has reviewed the initial grievance in this case and concludes Stanley failed to request monetary relief.[6] Ex. C (Grievance No. 1025600), ECF No. 12-4; *also attached at* ECF No. 17 at 19-20. In Grievance No. 1025600 Stanley alleged his health did not seem to be a priority and was not "being taken seriously [by] PA Nicolson and Dr. Little." *Id.* He sought the following relief: "all pictures from all three ultra sounds that were taken, all lab test [sic], results and findings as well as all X-Rays that were conducted for my abdominal area and whatever the courts may deem necessary." *Id.* Contrary to his argument, Stanley's request for "whatever the courts may deem necessary" does not satisfy the requirements of DC-ADM 804. *See*, *e.g.*, *Johnson v. Wireman*, 809 F. App'x 97, 99 (3d Cir. 2020) (stating plaintiff's request in his initial grievance for "whatever relief may be available under law" did not properly exhaust his claim for money damages); *see also Camacho v. Beers*, No. 16-1644, 2018 WL 6618410, *2-3 (W.D. Pa. Dec. 18, 2018) (finding plaintiff's statement in initial grievance "asking for relief as allowed by law" did not "request the specific relief of monetary compensation"). Thus, because Stanley did not request monetary damages in his initial grievance, his claim for monetary damages is procedurally defaulted and must be dismissed.[7]

---

[6] The Court notes Grievance No. 1025600, which was attached to both Defendants' motion and Stanley's response, is an authentic document which Stanley referred to in his Complaint. The Court thus considers the grievance without converting this motion into one for summary judgment. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018) (internal quotations and alterations omitted).

[7] In his response, Stanley refers to other grievances which he appears to have filed before Grievance No. 1025600. Pl.'s Br. Supp., ECF No. 17 at 15; Off. Inmate Grievance, Dec. 22, 2022, ECF No. 17 at 35. Grievance No. 1004685 is dated October 30, 2022 and Grievance No. 1012545 is dated December 22, 2022. ECF No. 17 at 29, 35. Stanley asserts these grievances are exhausted, and he attached copies of them to his response. *Id.* at 15, 29-40. Even assuming these grievances

The Court turns to Stanley's requests for declaratory and injunctive relief. First, Stanley requests a declaration that Defendants violated his constitutional rights. Compl. at 2, 9, ECF No. 2. Declaratory relief, however, "is inappropriate solely to adjudicate past conduct," and is not "meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*); *see also Andela v. Admin. Off. of U.S. Cts.*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."); *Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("Declaratory judgment is available to define the legal rights of parties, not to adjudicate past conduct where there is no threat of continuing harm."). Because the Court cannot grant the declaratory relief Stanley seeks, this request will also be dismissed.[8]

Finally, Stanley seeks a permanent injunction against "Little and Nicholson or any staff working for WellPath, Inc." to refrain from retaliation. Compl. at 2, 9, ECF No. 2. The allegations in the Complaint, however, do not suggest Defendants are currently retaliating against Stanley, nor that they will retaliate against him in the future. As such, he does not have standing to seek injunctive relief. *See City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983) (standing to pursue injunctive relief depends on whether plaintiff is "likely to suffer future injury"); *see also Anderson v. Davila*,

---

are relevant to the claims in this case, the Court concludes neither grievance requested monetary relief. Specifically, Grievance No. 1004685 did not request any form of relief, and Grievance No. 1012545 requested the following: "I would like for another Doctor to fully examine me and my medical records or release me from D.O.C. care so that I am able to get the correct care and whatever the courts deems [sic] necessary." *Id.* at 29-32, 35-38.

[8] Stanley's request for declaratory relief is also subject to dismissal for because Stanley's initial grievance did not seek a determination that Defendants had violated his constitutional rights. His request for declaratory judgment is thus precluded. *See Shorter*, 2024 WL 1442163, at *4; *see also Booth*, 532 U.S. at 741 n.6 ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues").

125 F.3d 148, 164 (3d Cir. 1997) ("To show irreparable harm, the party seeking injunctive relief must at least demonstrate that there exists some cognizable danger of recurrent violation of its legal rights." (internal quotations omitted)). Stanley has not alleged a basis to seek injunctive relief because his claims are entirely predicated on past harm, *i.e.*, how Defendants responded to his alleged need for medical care from 2022 through 2023. Accordingly, the Court will dismiss Stanley's requests for injunctive relief for lack of standing.

**CONCLUSION**

Defendants' Motion to Dismiss will be granted and Stanley's Complaint will be dismissed without prejudice. *See Talley v. Constanzo*, No. 19-2650, 2022 WL 17352167, at *3 (3d Cir. Dec. 1, 2022) ("Although we agree with the District Court's dismissal of Talley's federal claims for lack of exhaustion, that dismissal should have been without prejudice, not with prejudice."); *see also Monroe v. Nunn*, No. 21-2218, 2022 WL 885095, at *1 (3d Cir. Mar. 25, 2022) ("When a prisoner does not exhaust his administrative remedies, his complaint should be dismissed without prejudice to enable him to cure the procedural defect."). But because Stanley cannot cure his procedural default, and because he does not have standing to seek injunctive relief, the Court concludes amendment would be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Therefore, the Court will not grant Stanley leave to amend.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.